UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23661-PCH

ZEFLON LLC,
        Plaintiff,
v.

EN CORP USA, ENCORP SWITZERLAND AG, and DOES 1 to 10, inclusive,
        Defendants.
_____/

**PLAINTIFF ZEFLON LLC'S OPPOSITION TO DEFENDANT EN CORP USA'S MOTION TO DISMISS**

**I.**       **INTRODUCTION**

Plaintiff Zeflon LLC ("Plaintiff" or "Zeflon") issued a purchase order for antigen kits to Defendant EN Corp USA ("Defendant" or "EN Corp USA") in October 2021. In negotiating the transaction, Plaintiff's CEO, Eliezer Nerenberg, initially dealt with Benjamin Zabary, principal of Encorp Switzerland, who represented himself as the owner of the company Encorp. Zabary introduced Plaintiff to EN Corp USA and EN Corp USA's CEO Enrique Garcia, as the U.S. division of Encorp. All evidence reveals the two entities to be the same company and instrumentalities of each other to perpetuate fraud and, therefore, alter egos.

To effectuate the transaction for the antigen kits, Plaintiff and Defendant EN Corp USA entered into an Escrow Agreement, signed by the official corporate stamp of EN Corp USA. However, both Defendants deceived Plaintiff and never intended to use the escrow funds for their contractually obligated purpose of producing antigen kits. Escrow funds in the amount of $217,000 were released to Defendants, despite their misrepresentations. As Defendants intentionally failed to fulfill any of their obligations pursuant to the Escrow Agreement, the funds should have been

1

returned to the rightful possession of Plaintiff. Yet, for more than a year, Defendants have refused to return the escrow funds, having converted them to their own use. In July 2021, Plaintiff entered into a Settlement Agreement with Defendant EN Corp USA, in an effort to avoid litigation. Despite its further promises to return Plaintiff's money, Defendant EN Corp USA has entirely failed to do so.

This Court may properly exercise personal jurisdiction over Defendant EN Corp USA under Florida's long arm statute, Fla. § 48.193(1)(1)(7), due to Defendant's material breach of the Escrow and Settlement Agreements by failing to pay Plaintiff pursuant to the Agreements at Plaintiff's principal place of business in Florida. Further, exercise of specific jurisdiction satisfies Defendant's right to due process, on the basis of a forum-selection clause Defendant consented to in the Settlement Agreement. Defendant can reasonably expect to be haled into this Court for disputes arising under the Escrow and Settlement Agreements.

Finally, Plaintiff has sufficiently pled its breach of contract, conversion, and civil theft claims against Defendant. Defendant's Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) should thus be denied.

**II.    STATEMENT OF RELEVANT FACTS**

Plaintiff is a Delaware limited liability company that sold antigen kits throughout the United States during the pandemic. Dkt. No. 1 ("Complaint") ¶¶ 1, 8; Declaration of Eliezer Nerenberg, "Nerenberg Decl. ¶ 2. Plaintiff's principal place of business is in Miami Beach, Florida. Complaint ¶ 1 ¶ 1; Nerenberg Decl. ¶ 2. Defendant EN Corp USA is a corporation with its principal place of business in El Paso, Texas. Complaint ¶ 2; Nerenberg Decl. ¶ 3. Defendant Encorp Switzerland AG is a corporation with its principal place of business in Switzerland. Complaint ¶ 3; Nerenberg Decl. ¶ 4. Both Defendants trade pharmaceutical products throughout the United

States, China, and Europe. Complaint ¶ 9; Nerenberg Decl. ¶ 5. On or about October 26, 2021, Plaintiff issued Purchase Order #1233 to EN Corp USA for five hundred thousand (500,000) units of Flowflex Rapid Antigen Over the Counter Kits (the "Antigen Kits") at $4.35 per unit. Complaint ¶ 10; Nerenberg Decl. ¶ 6. In negotiating and coordinating the deal, Plaintiff's CEO Eliezer Nerenberg initially dealt with Benjamin Zabary ("Zabary"), who represented himself as the owner of the company Encorp. Nerenberg Decl. ¶ 7. Zabary then referred Plaintiff to EN Corp USA and EN Corp USA's CEO, Enrique Garcia ("Garcia"), as the U.S. division of Encorp to execute the necessary agreements to procure the antigen kits. Nerenberg Decl. ¶ 7.

On or about October 27, 2021, Zeflon and EN Corp USA entered into an Escrow Agreement in which Zeflon agreed to deposit into the escrow account the sum of $2,175,000 (Two Million and One Hundred Seventy-Five Thousand Dollars)( the "Escrow Amount"), on the date of the Purchase Order, and EN Corp USA agreed to provide Zeflon with the Emergency Use Authorization ("EUA") documentation from the manufacturer of the Antigen Kits, with barcodes, lot numbers, and compliant disclosures along with the labels for each box that are compliant with U.S. FDA guidelines (hereinafter referred to as the "Escrow Agreement"). Complaint ¶ 11; Complaint, Exhibit C; Nerenberg Decl. ¶ 8. The Escrow Agreement was signed by official corporate stamp and signature of EN Corp USA and Encorp Switzerland AG on the signature line for Enrique Garcia, CEO of EN CORP USA. Complaint, Exhibit C; Nerenberg Decl. ¶ 9. Contrary to the assertions in Garcia's declaration that he was unaware of the Escrow Agreement, Garcia was included in the e-mail communications in October 2021 pertaining to the executed Escrow Agreement. Nerenberg Decl. ¶ 10.

As per Appendix A of the Escrow Agreement, upon the execution of the Escrow Agreement, Plaintiff allowed the Escrow Agent to release ten percent (10%) of the Escrow Amount

to an account designated by Defendants. Complaint, Exhibit C; Nerenberg Decl. ¶ 11. The Escrow Agreement further provided that in the event that by no later than the close of business on the seventh (7th) business day after the funds are deposited into the Escrow Account, Defendants did not provide access for the physical inspection of the Antigen Kits or other instrument referred to in the Purchase Order, then on the next following business day, the full amount in the Escrow Account shall be returned to Zeflon by the Escrow Agent and the 10% balance shall be returned by Defendants. Complaint, Exhibit C; Nerenberg Decl. ¶ 12.

After Plaintiff provided Defendants with multiple extensions to provide the inspection of the Antigen Kits' documentation, Defendants were unable to provide an inspection of the documentation or the actual Antigen Kits and failed to send the Antigen Kits within the prescribed period. Complaint ¶¶ 14-15; Nerenberg Decl. ¶ 13. In or about December 2021, it became apparent to Plaintiff that Defendants had misrepresented their ability to fulfill the Purchase Order and deceived Plaintiff into paying for products it never intended to provide. Nerenberg. Decl. ¶ 14. Accordingly, Plaintiff demanded the Escrow Agent return its funds, which were released. Complaint ¶ 16; Nerenberg Decl. ¶ 16. However, to date, all Defendants have failed to return Plaintiff's $217,000 they received from the Escrow Agent within the prescribed period. Complaint ¶ 17; Nerenberg Decl. ¶ 17. Defendants had been contractually obligated to use the Escrow Amount to provide Antigen Kits, which they failed to so, instead converting the funds to their own purpose. Nerenberg Decl. ¶ 18.

Plaintiff requested the refund of the initial amount of $217,000 and the parties agreed to a payment schedule through a settlement agreement (the "Settlement Agreement"), believing that a pre-litigation settlement would be in their respective best interests. Complaint ¶ 18; Nerenberg Decl. ¶ 19. The Settlement Agreement states that it is between Zeflon LLC and EN Corp USA and

was executed on July 21, 2022 by official corporate stamp of Encorp Switzerland AG. Complaint, Exhibit A; Nerenberg Decl. ¶ 20. Plaintiff's CEO Eliezer Nerenberg sent the Settlement Agreement to Enrique Garcia, CEO of EN Corp USA on July 25, 2022. Nerenberg Decl. ¶ 21.

To settle all disputes arising out of and relating to the damages sustained by Plaintiff, Plaintiff and EN Corp USA agreed as follows, "Upon execution En Corp shall pay, and Zeflon shall receive a Settlement Payment in the amount of $217,000 (the "Settlement Payment"). The Settlement Payment shall be made as follows: (i) En Corp shall pay $50,000 per month ("Monthly Installments") to Zeflon until $217,000 (the "Principal") is paid in full to Zeflon[;] (ii) En Corp shall make the Monthly Installments on the 15th day of each month, with a five (5) day grace, with the first payment due on or before July 31, 2022[.]" Complaint ¶ 19; Complaint, Exhibit A, section 2; Nerenberg Decl. ¶ 22. As of July 31, 2022, Defendants failed to make the first monthly installment, and thus breached the Settlement Agreement. Complaint ¶ 20; Nerenberg Decl. ¶ 23. Defendants did not cure their failure to pay the first monthly installment during the cure period. Complaint ¶ 21; Nerenberg Decl. ¶ 24. The releases in the Settlement Agreement were only effective upon the full payment of the $217,000. Complaint ¶ 22; Nerenberg Decl. ¶ 24. Accordingly, Defendants breached their promises and covenants undertaken in the Settlement Agreement. Complaint ¶ 23.

Per the Settlement Agreement of July 22, 2022, Plaintiff and Defendants consented to the exclusive jurisdiction of any U.S. Federal or Florida State Court sitting in Miami-Dade County, in any dispute, action, litigation or other proceeding relating in any way to the Settlement Agreement, and agreed that any dispute, action, litigation or other proceeding shall be brought by it solely in any such court. Complaint ¶ 7; Complaint, Exhibit A; Nerenberg Decl. ¶ 25.

Plaintiff, through its counsel, sent a statutory letter pursuant to Florida Statute section 772.11, demanding that EN Corp pay treble damages in the amount of $651,000 to Plaintiff in accordance with said statute. Complaint ¶ 49; Nerenberg Decl. ¶ 26. To date, Defendants have failed to pay Plaintiff any of the monies demanded in the statutory letter. Complaint ¶ 50; Nerenberg Decl. ¶ 27.

Plaintiff filed its Complaint on November 8, 2022, alleging causes of action for Breach of the Escrow Agreement; Breach of the Settlement Agreement; Conversion; and Civil Theft. Complaint; Nerenberg Decl. ¶ 28.

### III. ARGUMENT

#### A. Personal Jurisdiction Legal Standard

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Once the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). "Where . . . the Defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); see also *Internet Sols. Corp.*, 557 F.3d at 1295; *Cable/Home Communication Corp. v. Network*

*Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). In addressing whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). Moreover, "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." Id.

Furthermore, a court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair*, 94 F.3d at 626. Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. See Fla. Stat. §§ 48.193(1)-(2); see also *Easygroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 U.S. Dist. LEXIS 166425, 2020 WL 5500695, at *6 (S.D. Fla. Sept. 11, 2020). The Eleventh Circuit has held that the reach of Florida's long-arm statute is a question of state law, and that federal courts must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1352. If the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific jurisdiction, then the court must also consider the federal Due Process Clause. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000).

      a.    **Plaintiff Has Sufficiently Pled that Defendant Is a Party to the Settlement and Escrow Agreements**

As a preliminary issue, Plaintiff has sufficiently pled that Defendant EN Corp USA is a party to the Settlement and Escrow Agreements. "A contract may be binding on a party despite

the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So.2d 500, 503 (Fla.Dist.Ct.App. 2003)(citing *Sosa v. Shearform Mfg.*, 784 So. 2d 609 (Fla. 5th DCA 2001)). Further, "[c]ommon law principles of contract and agency law permit a signatory to bind a non-signatory under a limited set of circumstances, these include: '(1) incorporation by reference; (2) assumption; (3) agency; (4) **veil-piercing/alter-ego**; and (5) estoppel.'" *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169-70 (11th Cir. 2009)(quoting *World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008))(emphasis added).

Here, the Settlement Agreement and Escrow Agreement clearly state on their faces that they are between Zeflon LLC and EN Corp USA. The Agreements even identify that the party to the Agreements, EN Corp USA, is a Texas corporation with its principal place of business at 1200 Golden Key Cir. Suite 235, El Paso, Texas 79925. Plaintiff's underlying purchase order for antigen kits, which led to the dispute between the parties and the Agreements at issue, was made out to the seller EN Corp USA. Yet, Defendant's argument is that the only party to sign, and therefore assent to, the Agreements, is a wholly distinct entity with an identical name, Encorp Switzerland. In negotiating and coordinating the purchase order and Agreements, Zabary represented to Plaintiff that Encorp was one company, of which EN Corp USA was the U.S. division. The credibility of Defendant's supporting affidavit is strained by the clearly false statement that he was unaware of the Escrow Agreement, which is belied by the e-mail communications pertaining to the Agreement that he received in October 2021. Garcia's credibility is further undermined by the obvious physical evidence of EN Corp USA's official corporate stamp and signature on the Escrow Agreement. Defendant fails to explain the circumstances by which Encorp Switzerland had access

to EN Corp USA's official corporate stamp to sign contracts, unless the two entities were regularly acting as "mere instrumentalit[ies]" of each other. *Ocala Breeders' Sales Co. v. Hialeah, Inc*., 735 So. 2d 542, 543 (Fla. 3d DCA 1999). The Agreements themselves are evidence that Encorp Switzerland and EN Corp USA are alter egos, therefore, EN Corp Switzerland's signature on the Agreements bound EN Corp USA, the named party to the Agreements.

Contrary to Defendant's assertion, Plaintiff does not need to allege all the components of alter ego status in order to satisfy the pleading requirement at this stage. Plaintiff is not arguing for the exercise of personal jurisdiction over Defendant under the alter ego theory that one of the entities is a Florida resident, as is the case in Defendant's authority, *Parisi v. De Kingston*, 314 So. 3d 656 (Fla. 3d DCA 2021). Here, Plaintiff only needs to "make the general allegations to support a reasonable inference of an alter ego relationship, thereby satisfying a notice pleading standard [set forth in Fed.R.Civ.P. 8]." *Sinaltrainal v. Coca-Cola Co*., 16 Fla. L. Weekly Fed. D388 (U.S. S.D. Fla. March 28, 2003). At the motion to dismiss stage, the issue before the Court is not if Plaintiff will prevail on the alter ego theory, but whether Plaintiff's allegations are sufficient to allow it the opportunity to conduct discovery on the jurisdictional issue. *Jackam v. Hospital Corp. of America Mideast, Ltd*., 800 F.2d 1577 (11th Cir. 1986). Thus, Plaintiffs need not initially allege specific facts proving an alter ego relationship to withstand Defendant's Motion. *Sinaltrainal*, 16 Fla. L. Weekly Fed. D388. If the minimal standard of notice pleading under Rule 8 is satisfied, the Court should grant jurisdictional discovery. *Id.*

Finally, the Eleventh Circuit has held that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997); *see Kipperman v. Onex Corp.,* 1:05-CV-1242-JOF, 2006 U.S. Dist. LEXIS 96944,

9

2006 WL 8421931, at *8 (N.D. Ga. Sept. 15, 2006) (finding plaintiff had pleaded "a sufficient basis for addressing all of the [defendant entities] together" where defendants were nine corporations, limited liability companies, and limited partnerships with linkages varying between them from wholly-owned subsidiaries to majority shareholders, and where plaintiff had also contended that defendants were alter-egos of each other).

      **b.** **Florida's Long Arm Statute Confers Personal Jurisdiction over Defendant**

To set forth sufficient allegations to make a prima facie case for the Court's personal jurisdiction over Defendant pursuant to Florida's long-arm statute, Plaintiff must allege that the Agreements between Plaintiff and Defendant required performance in Florida, Defendant purposefully availed itself of the benefits of the State of Florida, and it was reasonable for Defendant to expect that it would be hauled into a Florida court. *See Company.com, LLC v. Cindi's Rest. Corp.*, No. 22-cv-20863-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 144575, at *6-7 (S.D. Fla. Aug. 12, 2022). Florida's long-arm statute, Fla.Stat. § 48.193, provides in relevant part: "(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself … to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: … (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)(7); see *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996).

When non-payment of the amount due under a contract in Florida constitutes a breach of the agreement, jurisdiction is proper under Florida's long-arm statute section 48.193(1)(1)(7). *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000); *Pacific*

*Coral Shrimp v. Bryant Fisheries*, 844 F. Supp. 1546, 1548 (S.D. Fla. 1994); *Laser Elec. Contractors, Inc. v. C.E.S. Indus., Inc.*, 573 So. 2d 1081, 1083 (Fla. 4th DCA 1991). "It is well settled that the legal presumption that a debt is to be paid at the creditor's place of business in the absence of an express designation of the place of payment is sufficient to satisfy the language in 48.193(1)(g) that refers to contractual acts 'required' to be performed in Florida." *Vacation Ventures v. Holiday Promotions*, 687 So. 2d 286, 289 (Fla. 5th DCA 1997)(citing *Kane v. American Bank of Merritt Island*, 449 So. 2d 974 (Fla. 5th DCA 1984); *Unger v. Publisher Entry Service, Inc.*, 513 So. 2d 674 (Fla. 5th DCA 1987), *rev. denied*, 520 So. 2d 586 (Fla. 1988); *Laser Electric Contractors, Inc. v. C.E.S. Industries, Inc.*, 573 So. 2d 1081 (Fla. 4th DCA 1991)).

Here, the Escrow Agreement states that the Escrow Amount "shall be returned to the Purchaser" (Complaint, Exhibit C, Appendix A), i.e. Plaintiff, and the Settlement Agreement clearly states that "Zeflon shall receive a Settlement Payment[.]" (Complaint, Exhibit A, section 2). While no place of payment is designated, Plaintiff's principal place of business is in Miami Beach, Florida. Therefore, it is legally presumed that the contractual act of payment was required to be made to Plaintiff in Florida. Defendant materially breached the Agreements by failing to return the Escrow Amount to Plaintiff. Jurisdiction is thus proper under Florida's long-arm statute for Defendant's breach of the Agreements for failure to pay Plaintiff in Florida.

      c.      **Exercise of Specific Jurisdiction Pursuant to Florida's Long Arm Statute Satisfies Due Process**

The Court must next determine whether the exercise of specific jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(7) will violate Defendant's Due Process rights. Analysis of the Due Process Clause depends on three factors: (1) Defendant's purposeful availment of Florida; (2) the cause of action arising out of the activities of which Defendants purposefully availed themselves;

11

and (3) reasonable foreseeability of Defendants being hauled into court in Florida. See *Future Tech.*, 218 F.3d at 1250-51 (citing *Burger King*, 471 U.S. at 475). In addition, the Court must determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice, meaning the Court must balance: "(a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies." *Id*. at 1251 (citing *Burger King*, 471 U.S. at 466).

"It has been held that the failure to pay money in Florida, standing alone, would not suffice to obtain jurisdiction over a nonresident defendant." *Glob. Satellite Commun. Co. v. Sarl Sudline*, 849 So. 2d 466, 469 (Fla. 4th DCA 2003)(citing *Christus St. Joseph's Health Sys. v. Witt Biomedical Corp.*, 805 So. 2d 1050, 1054 (Fla. 5th DCA 2002); *Pres-Kap, Inc. v. Sys. One, Direct Access, Inc.*, 636 So. 2d 1351 (Fla. 3d DCA 1994); *Hatcher v. Hatcher*, 598 So. 2d 214 (Fla. 2d DCA 1992)). "But, where a requirement to pay money in Florida has been <u>coupled</u> with a Florida venue selection clause in a contract, courts have held that the nonresident defendant should reasonably expect to be hauled into court in Florida." *Glob. Satellite Commun. Co.*, 849 So. 2d at 469 (citing *Desai Patel Sharma, Ltd. v. Don Bell Indus., Inc.*, 729 So. 2d 453 (Fla. 5th DCA 1999); *Dolphin Aviation, Inc. v. High Country Helicopters, Inc.*, 695 So. 2d 811 (Fla. 2d DCA 1997); *Jefferson Sav. & Loan Ass'n v. Greenman Group, Inc.*, 531 So. 2d 428 (Fla. 4th DCA 1988); *Maritime Ltd. P'ship. v. Greenman Adver. Assocs., Inc.*, 455 So. 2d 1121 (Fla. 4th DCA 1984). "[W]hen jurisdiction is based on the breach of a contract in Florida coupled with a Florida venue selection clause, the defendant has given implied consent to personal jurisdiction in the

forum State and has, in essence, conceded minimum contacts." *Id*. (citing *Desai Patel Sharma, Ltd,* 729 So. 2d at 454).

Here, the Settlement Agreement contains a forum-selection clause whereby Defendant EN Corp USA, bound by its alter ego Encorp Switzerland, consented to the exclusive jurisdiction of any U.S. Federal or Florida State Court sitting in Miami-Dade County. Coupled with Defendant's failure to pay Plaintiff according to the Agreements at Plaintiff's place of business in Florida, this sufficiently shows that Defendant had the minimum contacts with Florida to satisfy Due Process and jurisdiction is proper in this Court. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction should thus be denied.

### B. <u>Pleading Legal Standard</u>

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. If the facts satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id*. at 556.

Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. (quotation marks omitted); *see also Speaker v. United States HHS CDC & Prevention*, 623 F.3d

1371, 1380 (11th Cir. 2010). "[T]he rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

### a. Plaintiff Has Sufficiently Pled Its Breach of Contract Claim

Plaintiff has sufficiently pled breach of the Agreements. To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

Plaintiff alleges the existence of the contracts, attached to the Complaint as Exhibits A and C. The Agreements speak for themselves as to the parties bound by them and Plaintiff sufficiently alleges, to the extent that Defendant EN Corp USA disputes its signature, that EN Corp USA and Encorp Switzerland are alter egos. EN Corp USA is thus bound to the Agreements. Plaintiff further alleges, in detail, Defendant's material breach of the Agreements when it failed to return the Escrow Amount. Finally, Plaintiff alleges its damages resulting from Defendant's breach, in the amount of $217,000. Therefore, Plaintiff's factual allegations against Defendant satisfy the elements for its breach of contract claims and Defendant's Motion to Dismiss for Failure to State a Claim should be denied.

### b. Plaintiff Has Sufficiently Pled Its Conversion Claim

Under Florida law, a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment

14

of money cannot generally form the basis of a claim for conversion or civil theft."). However, the general rule does not foreclose a claim for civil theft or conversion under certain limited circumstances. When there is a contractual relationship between the parties, the alleged civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 495 (Fla. 3d DCA 1994). "For money to be the object of conversion, 'there must be an obligation to keep intact or deliver the specific money in question, so that [the] money can be identified.'" *Gasparini*, 972 So. 2d at 1056 (quoting *Futch v. Head*, 511 So. 2d 314, 320 (Fla. 1st DCA 1987); *Belford Trucking v. Zagar*, 243 So. 2d 646 (Fla. 4th DCA 1970)). This is generally established if the alleged wrongdoer is obligated to hold the funds in a trust or escrow account. *See, e.g., Masvidal v. Ochoa*, 505 So. 2d 555 (Fla. 3d DCA 1987) (civil theft and conversion can be asserted where a party embezzles funds from an escrow account). Here, the basis for Plaintiff's claims for conversion and civil theft is Defendant's misappropriation of escrow funds for its own use.

A properly pleaded cause of action for conversion alleges "the exercise of wrongful dominion or control over property to the detriment of the rights of the actual owner." *DePrince v. Starboard Cruise Servs., Inc.*, 163 So. 3d 586, 597 (Fla. 3d DCA 2015). A plaintiff must plead "facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

Here, the Complaint shows that Defendant was obligated by the Escrow Agreement to hold Plaintiff's funds in an escrow account. Plaintiff has pled facts sufficient to show that it was entitled to the Escrow Amount, pursuant to the Escrow Agreement, upon Defendant's failure to fulfill its obligations in providing the Antigen Kits. When Defendant refused to return the Escrow Amount,

in material breach of the Agreements, it wrongfully asserted dominion over the Escrow Amount. *Id.* Plaintiff alleges that Defendant misappropriated the Escrow Amount for its own use. Defendant's wrongful retention of the Escrow Amount for over a year and continued failure to return Plaintiff's money can only indicate that it has converted the funds to its own control and use. Plaintiff has thus adequately pled its Conversion claim and Defendant's Motion to Dismiss for Failure to State a Claim should be denied.

### c. **Plaintiff Has Sufficiently Pled Civil Theft**

"To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008); *see also Gersh v. Cofman*, 769 So. 2d 407, 408 (Fla. 4th DCA 2000); *Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. 4th DCA 2013). In *Masvidal v. Ochoa*, 505 So. 2d 555 (Fla. 3d DCA 1987), the defendant lawfully obtained possession of the plaintiff's funds to set up the escrow fund and thereafter converted the funds for his own use. The court concluded the actions of the defendant constituted a civil theft and a conversion as well as a breach of contract. 505 So. 2d 555 (Fla. 3d DCA 1987).

Here, Defendants misrepresented their ability to fulfill the Purchase Order and deceived Plaintiff into paying for products Defendants never intended to deliver. Defendant intentionally failed to fulfill any of its obligations regarding the Antigen Kits, as required by the Escrow Agreement. Defendant was required to use the Escrow Amount for production of Antigen Kits and did not, instead converting the funds to its own improper use. Defendant's deception pervades the Agreements, as Enrique Garcia attests that the EN Corp USA official stamp and signature was applied fraudulently. Defendant has refused to return the Escrow Amount for over a year, despite

entering into a Settlement Agreement with Plaintiff. Defendant's conduct shows a criminal intent to deprive Plaintiff of its rightful Escrow Amount.

Plaintiff has thus adequately pled its claim for Civil Theft and Defendant's Motion to Dismiss for Failure to State a Claim should be denied.

**IV.     REQUEST FOR LIMITED JURISDICTIONAL DISCOVERY**

In the event the Court is inclined to grant any part of Defendant's Motion, Plaintiff hereby requests leave to amend to further allege facts, as well as leave to conduct limited jurisdictional discovery to show that Defendant EN Corp USA, as the alter ego of Defendant Encorp Switzerland, is bound by the Agreements and has the minimum contacts with Florida necessary for this Court to exercise jurisdiction over Defendant.

There is evidence that the Garcia declaration contains falsehoods, such as his lack of knowledge of the Escrow Agreement, which was signed by official stamp of EN Corp USA. Furthermore, Garcia was included in the e-mail communications pertaining to the Escrow Agreement. Plaintiff therefore requests the opportunity to investigate any further misrepresentations that EN Corp USA and Encorp Switzerland are separate entities. Plaintiff has sufficiently pled that the two entities are alter egos to satisfy a notice pleading standard [set forth in Fed.R.Civ.P. 8]. *Sinaltrainal v. Coca-Cola Co.*, 16 Fla. L. Weekly Fed. D388 (U.S. S.D. Fla. March 28, 2003). The Court should thus order jurisdictional discovery on the issue.

**V.     CONCLUSION**

This Court may properly exercise personal jurisdiction over Defendant under Florida's long arm statute, Fla. Stat. § 48.193(1)(1)(7), due to Defendant's material breach of the Agreements by failure to pay Plaintiff in Florida. Further, exercise of specific jurisdiction satisfies

Defendant's right to due process, on the basis of the forum-selection clause of the Settlement Agreement.

Finally, Plaintiff has sufficiently pled its claims for breach of contract, conversion, and civil theft, or the Court should grant Plaintiff leave to amend. Defendant's Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) should thus be denied.

                                                Respectfully submitted,

                                                */s/Menachem M. Mayberg*
                                                MENACHEM M. MAYBERG
                                                Florida Bar No: 0596744
                                                SELTZER MAYBERG LLC.
                                                10750 NW 6th Court
                                                Miami, Florida 33168
                                                Tel: 305.444.1565
                                                Fax: 305.444.1665
                                                m@smfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, the foregoing document was filed with the Clerk of the Court via CM/ECF.

                                        By:          */s/ MMM*
                                                       Menachem Mayberg